UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DR. TIENGO TING, and :
THE BRIDGEPORT EDUCATION :
EXCHANGE, LLC, :
    Plaintiffs, :
 :
v. : 3:11-cv-20 (CFD)
 :
THE UNIVERSITY OF BRIDGEPORT, :
NEIL ALBERT SALONEN, and :
TAREK M. SOBH, :
    Defendants. :

## RULING ON MOTION TO REMAND

Dr. Tiengo Ting and The Bridgeport Education Exchange, LLC (collectively, the "plaintiffs"), filed a twenty-seven count complaint in the Connecticut Superior Court alleging, among other Connecticut statutory and common law claims, a violation of Conn. Gen. Stat. § 31-51q. The University of Bridgeport, Neil Albert Salonen, and Tarek M. Sobh (collectively, the "defendants") removed the case to federal court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. Pending is plaintiffs' motion to remand based on lack of subject matter jurisdiction over the Complaint, or, in the alternative, lack of subject matter jurisdiction over the plaintiffs' Amended Complaint.[1]

---

[1] On January 17, 2011, the plaintiffs filed a motion to amend the Complaint (Dkt. #15). Prior to the Court ruling on the plaintiffs' motion, however, the plaintiffs filed an Amended Complaint (Dkt. #16) as a matter of right.

**I.     Factual Background**[2]

This case arises out of Dr. Ting's employment with the University of Bridgeport. Dr. Ting was an Associate Professor and Department Director in the University of Bridgeport's Mechanical Engineering Department. Dr. Ting also owned the Bridgeport Education Exchange, which helped recruit Chinese students for the University of Bridgeport. In December 2009, the University of Bridgeport terminated Dr. Ting's employment, and he then filed this action in the Connecticut Superior Court. The defendants removed it to this Court on January 5, 2011.

**II.    Discussion**

The plaintiffs claim that the Complaint, or in the alternative, the Amended Complaint, does not allege a cause of action that arises under federal law, and therefore, the court lacks subject matter jurisdiction and the case should be remanded.

A defendant may remove an action originally filed in state court only if the case originally could have been filed in federal court, see 28 U.S.C. § 1441(a), and the defendant bears the burden of showing the propriety of that removal, see Grimo v. Blue Cross/Blue Shield, of Vt., 34 F.3d 148, 151 (2d Cir. 1994). To determine whether federal question jurisdiction can be a basis for removal, courts are guided by the well-pleaded complaint rule, which provides that "federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law . . ., and only when plaintiff's well-pleaded complaint raises issues of federal law." Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998) (internal citations omitted).

---

[2] These facts are taken from the allegations of the plaintiffs' Complaint and from both parties' memoranda in support of and in opposition to the pending motion to remand. To resolve disputed issues of fact relating to subject matter jurisdiction, the court may consider evidence beyond the pleadings, including affidavits and other evidence submitted by the parties. See Flores v. Southern Peru Copper Corp., 414 F.3d 233, 235 n.30 (2d Cir. 2003).

Under 28 U.S.C. § 1331, federal courts also have jurisdiction over cases that "arise under" federal law. Thus, in order for the court to have subject matter jurisdiction pursuant to 28 U.S.C. § 1331, a complaint does not have to include a cause of action created by federal law. Rather, a state law cause of action that "necessarily depends on resolution of a substantial question of federal law" is sufficient to invoke the court's subject matter jurisdiction. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 28 (1983); see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312–14 (2005) (discussing the jurisdictional doctrine of "arising under" federal law). Even if a state law claim implicates a substantial federal question, federal jurisdiction is only appropriate after considering the "welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." Franchise Tax Bd., 463 U.S. at 8; see also Merrell Dow v. Pharm. Inc. v. Thompson, 478 U.S. 804, 810 (1986) (discussing the importance of the state/federal relationship). Accordingly, the controlling inquiry is "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons, 545 U.S. at 314; see A.O. Sherman, LLC v. Bokina, No. 3:07-cv-0240, 2007 WL 2422282, at *2 (D. Conn. Aug. 22, 2007).

A.  Complaint

Count Ten of the plaintiffs' Complaint states a claim for a violation of Conn. Gen. Stat. § 31-51q. Conn. Gen. Stat. § 31-51q imposes liability upon "[a]ny employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the [F]irst [A]mendment to the United States Constitution or [parallel provisions

of the Connecticut Constitution], provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer . . . ." Dr. Ting claims that the University of Bridgeport violated section 31-51q by terminating him, at least in part, because he was not of the Muslim religion and for engaging in speech "including issues of academic freedom."

"Courts construing section 31-51q consistently look to federal First Amendment law to determine whether section 31-51q gives rise to a cause of action in the cases before them." Bracey v. Bd. of Educ., 368 F.3d 108, 116 (2d Cir. 2004). In Bracey, the U.S. Court of Appeals for the Second Circuit found that the plaintiff's state law claim for an alleged violation of Conn. Gen. Stat. § 31-51q arose under federal law and, therefore, required the court to "construe" and "evaluate" the scope of the First Amendment of the U.S. Constitution. See id. (citing D'Alessio v. N.Y. Stock Exch., Inc., 258 F.3d 93, 101 (2d Cir. 2001)). Consequently, the court in Bracey held that the plaintiff's state law claim under Conn. Gen. Stat. § 31-51q raised a substantial federal question and affirmed the district court's exercise of federal jurisdiction over the plaintiff's section 31-51q claim. See id.

There is a notable distinction between this case and Bracey. In Bracey, the defendant was a state government defendant and, therefore, in addition to liability under section 31-51q for First Amendment retaliation, the Second Circuit noted that the defendant could also have been liable on the same basis pursuant to 42 U.S.C. § 1983. Here, the University of Bridgeport is a private entity (not a government defendant) and, thus, is not a state actor subject to liability under §

1983.³  Based on this distinction, the plaintiffs claim that their section 31-51q claim does not arise under federal law.  However, the United States Supreme Court in Grable & Sons held that a private right of action under federal law is not a prerequisite to finding that a state law claim arises under federal law.  See Grable & Sons, 545 U.S. at 316–18 (analyzing the United States Supreme Court holding in Merrell Dow).  Instead, the absence of a private right of action should be considered as "evidence relevant to, but not dispositive of, the sensitive judgments about congressional intent that [28 U.S.C.] § 1331 requires." Id. at 318.  "The [U.S.] Court of Appeals [for the Second Circuit] has construed Grable to encompass a three-part inquiry: (1) whether the claim necessarily raises a stated federal issue, (2) whether the federal issue is actually disputed and substantial, and (3) whether the court may entertain the claim without disrupting the existing balance of state and federal judicial responsibilities." West Hartford Initiative to Save Historic Property v. Town of West Hartford, No. 3:06-CV-739, 2006 WL 2401441, at *4 (D. Conn. Aug. 18, 2006) (citing Broder v. Cablevision Sys. Corp., 418 F.3d 187, 195–96 (2d Cir. 2005)).

Here, the Court finds that the plaintiffs' statutory claim in Count Ten for a violation of Conn. Gen. Stat. § 31-51q satisfies the Grable inquiry, and provides subject matter jurisdiction in this Court.  First, Conn. Gen. Stat. § 31-51q incorporates by reference the First Amendment of the U.S. Constitution, thereby necessarily raising a stated federal issue.  While the First Amendment was originally intended as a check on the federal government's power to abridge citizens' freedom of speech and other stated rights (and has since been applied to state and local governments through the Fourteenth Amendment), the Connecticut legislature extended First

---

³ The individual defendants, Salonen and Sobh, are not named as defendants in Count Ten.

Amendment protections to employees in the private workplace through the enactment of Conn. Gen. Stat. § 31-51q. See Cotto v. United Techs. Corp., 738 A.2d 623, 632 (Conn. 1999). Thus, this extension of First Amendment protections against private employers was a policy decision of the Connecticut legislature, and the courts have followed federal decisions applying First Amendment protections against governments in adjudicating section 31-51q claims. See, e.g., Trusz v. UBS Realty Investors, LLC, No. 3:09cv268, 2010 WL 1287148, at *8–10 (D. Conn. Mar. 30, 2010) (applying federal First Amendment law to plaintiff's Conn. Gen. Stat. § 31-51q claim); Maury v. Computer Sciences Corp., No. 3:02CV1492, 2005 WL 646217, at *6–7 (D. Conn. Mar. 16, 2005) (same).

As to the second prong of Grable— whether the federal issue is actually disputed and substantial—an alleged violation of a person's freedom of religion and right to freedom of speech and expression, both fundamental rights provided for in the U.S. Constitution, is a substantial federal issue. See Bracey, 368 F.3d at 116. Unlike the state law negligence claim in Merrell Dow, where the U.S. Supreme Court found no federal jurisdiction when a federal drug labeling law was implicated, an alleged constitutional violation raises a more substantial federal issue that justifies exercise of federal jurisdiction. See Grable, 545 U.S. at 320 n.7 ("As Merrell Dow itself suggested, constitutional questions may be the more likely ones to reach the level of substantiality that can justify federal jurisdiction.").

Finally, as to the third prong of Grable—the balance between federal and state judicial responsibilities—there is no indication that exercising federal jurisdiction over the plaintiffs' section 31-51q claim will upset the balance of judicial responsibilities or "open the floodgates" to litigation of state law claims in federal court. See Grable, 545 U.S. at 319 (stating the purpose of

the third prong and finding the prong to be satisfied, even in the absence of a private right of action, because "it is the rare state quiet title action that involves contested issues of federal law"); see also See Broder, 418 F.3d at 196 (exercising federal jurisdiction over a state-law breach of contract action that sought to "assert a private right of action for [a] violation of federal law otherwise lacking one"). Because a claim for violation of the First Amendment by private employers appears to be infrequent, exercising jurisdiction over Dr. Ting's section 31-51q claim is not likely to "materially affect, or threaten to affect, the normal currents of litigation," especially given the number of supplemental state law claims that U.S. District Courts must already adjudicate in employment discrimination cases. See Grable, 545 U.S. at 319. Accordingly, the Court finds that the Grable inquiry is satisfied and, therefore, finds that the plaintiffs' Conn. Gen. Stat. § 31-51q claim arises under federal law.

B.   Amended Complaint

The plaintiffs filed a motion to amend their Complaint and subsequently filed an Amended Complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). The plaintiffs claim that even if their section 31-51q claim in their original Complaint arises under federal law, Count Ten of the Amended Complaint, which alleges a violation of Conn. Gen. Stat. § 31-51q, does not because their section 31-51q claim in the Amended Complaint now only references article I, sections 3 and 4 of the Connecticut Constitution, as opposed to both the First Amendment of the U.S. Constitution and those provisions of the Connecticut Constitution, as in the original Complaint.[4]

---

[4] Count Ten of the Complaint alleges violations of Dr. Ting's freedom of speech and freedom of religion in violation of both the First Amendment to the U.S. Constitution and article I, sections 3 and 4 of the Connecticut Constitution, and states: "Defendant University is thus

The plaintiffs' withdrawal of the reference to the First Amendment in Count Ten of their Amended Complaint does not affect the Court's conclusion as to whether the plaintiffs' section 31-51q claim arises under federal law, however. Similar to the protections of freedom of religion and freedom of speech provided in the First Amendment to the U.S. Constitution, article I, sections 3 and 4 of the Connecticut Constitution also provide citizens with the right to freedom of religion and freedom of speech, respectively.[5] The Second Circuit in Bracey suggested that a claim under section 31-51q is not severable from a federal constitutional claim if reliance is only on the state constitutional provisions. See Bracey, 368 F.3d at 116 (stating that because "[c]ourts construing section 31-51q consistently look to federal First Amendment law to determine whether section 31-51q gives rise to a cause of action . . . [w]hether Bracey recovered because the Board violated his right to free expression under the United States Constitution or the Connecticut Constitution, or both, then, does not matter"). In fact, as originally drafted, Connecticut House Bill 7218, which was eventually codified at Conn. Gen. Stat. § 31-51q, only referred to the rights set forth in the First Amendment to the U.S. Constitution; the addition of the references to certain provisions of the Connecticut Constitution appears to have been a

---

liable to Dr. Ting for Defendant University's violation of Conn. Gen. Stat. sec. 31-51q." In contrast, Count Ten of the Amended Complaint does not allege a violation of the First Amendment to the U.S. Constitution, stating: "Defendant University is thus liable to Dr. Ting for Defendant University's violation of Conn. Gen. Stat. sec. 31-51q solely through the statute's reference to Article 1, sections 3 and 4's [sic] of the Constitution of the State of Connecticut."

[5] Article I, section 3 of the Connecticut Constitution states: "The exercise and enjoyment of religious profession and worship, without discrimination, shall forever be free to all persons in the state; provided, that the right hereby declared and established, shall not be so construed as to excuse acts of licentiousness, or to justify practices inconsistent with the peace and safety of the state." Conn. Const. art. 1, § 3. Article I, section 4 of the Connecticut Constitution states: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of liberty." Conn. Const. art. 1, § 4.

subsequent amendment to the bill, and the additions were to supplement the protections of the First Amendment of the U.S. Constitution, not replace them.[6] In addition, the legislative history of the bill indicates that the Connecticut legislature emphasized the importance of applying the federal constitutional provision and would likely not have approved of severance of its provision—the bill was even titled "An Act Protecting the First Amendment Rights of Employees." See generally 26 S. Proc., Pt. 11, 1983 Sess., pp. 3596–604. Therefore, the plaintiffs' section 31-51q claim in the Amended Complaint still arises under federal law because courts construe section 31-51q claims in accordance with federal First Amendment law, irrespective of whether the plaintiff claims a violation of federal or state constitutional law. Accordingly, the plaintiffs' amendment to the Complaint is meaningless because the First Amendment cannot be severed from the plaintiffs' section 31-51q claim in Count Ten.

## III. Conclusion

Accordingly, the plaintiffs' motion to remand [Dkt. #13] is DENIED and the plaintiffs' motion to amend its complaint [Dkt. #15] is DENIED.

SO ORDERED this 7th day of June 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[6] Although the record of the bill's legislative history is not entirely clear, it appears that the reference to the Connecticut Constitution was included in House Amendment Schedule B, which was adopted on May 19, 1983.